Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-08-00414-CV

Rosalyn **BROWN**,
Appellant

v.

**BAPTIST HEALTH SERVICES, INC.** and/or
Baptist Health Services, Inc. doing business as St. Luke's Baptist Hospital,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-09447
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:   April 29, 2009

REVERSED AND REMANDED

Rosalyn Brown appeals the trial court's order granting the no-evidence summary judgment

filed by Baptist Health Services, Inc. and/or Baptist Health Services, Inc. doing business as St.

Luke's Baptist Hospital.  Brown sued the Hospital for negligence, and the Hospital moved for

summary judgment asserting that Brown could produce no-evidence with regard to the element of

proximate cause. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## BACKGROUND

Brown underwent a total hip replacement operation performed by Dr. Uwe Pontius. The morning after the operation, Brown was complaining of numbness in her leg. When Dr. Pontius examined Brown, he discovered the strap of the abductor pillow, that was placed on Brown to prevent post-surgical hip dislocation, was too tight around her knee. Brown was subsequently diagnosed as having "foot drop" which prevents her from walking in a normal manner.

Brown sued the Hospital for negligence, alleging that the nurses it employed failed to properly monitor the abductor pillow. Brown alleged that the failure to monitor allowed the strap to "unreasonably constrict blood flow in her right leg," thereby causing her injury.

## STANDARD OF REVIEW

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id*. at 751. A no-evidence point will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove the vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id*. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of

material fact. *Id*. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact. *Id*. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*.

## DISCUSSION

In a medical malpractice case, the plaintiff must prove by competent testimony that the defendant's negligence proximately cause the plaintiff's injury. *Bryant v. Levy*, 196 S.W.3d 166, 170 (Tex. App.—Amarillo 2006, pet. dism'd); *Thomas v. Farris*, 175 S.W.3d 896, 898-99 (Tex. App.—Texarkana 2005, pet. denied). The plaintiff must establish a causal connection beyond the point of mere conjecture or speculation; proof of mere possibilities cannot establish causation. *Lenger v. Physician's General Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970); *Bryant*, 196 S.W.3d at 170; *Thomas*, 175 S.W.3d at 899. A plaintiff, however, is neither required to establish causation in terms of medical certainty nor is the plaintiff required to exclude every other reasonable hypothesis. *See Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 405 (Tex. 1993); *First Assembly of God, Inc. v. Texas Utilities Elec. Co.*, 52 S.W.3d 482, 493 (Tex. App.—Dallas 2001, no pet.); *Bryant*, 196 S.W.3d at 170. The plaintiff is required to prove only that it is "more likely than not" that the injury was caused by the negligence of one or more defendants. *See Kramer*, 858 S.W.2d at 405; *Bryant*, 196 S.W.3d at 170; *Thomas*, 175 S.W.3d at 899. Stated differently, "it is sufficient to prove that the greater probability is that the defendant's conduct, alone or in contribution with others, was the cause of the harm." *First Assembly of God, Inc.*, 52 S.W.3d at 493.

More than one proximate cause, including more than one cause-in-fact, may exist. *Morrell v. Finke*, 184 S.W.3d 257, 284 (Tex. App.—Fort Worth 2005, pet. denied). The ultimate standard

of proof is whether by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about an injury, and without which the harm would not have occurred. *Morrell*, 184 S.W.3d at 284; *Thomas*, 175 S.W.3d at 899.

During his deposition, Dr. Pontius explained that the strap of the abductor pillow being too tight can put pressure on the nerve, resulting in nerve palsy, and if the strap is too tight or tight for too long, it can cause foot drop. Dr. Pontius further explained that an injury to Brown's sciatic nerve occurred "upstream from the knee" by the surgical site in the hip area, and a second injury occurred distally around the knee because "there was more complete deficit in the function of the perineal nerve as opposed to the tibial portion of the nerve. And if you expect the injury to be totally from the sciatic nerve, I would have expected the tibial nerve also to be a little bit more dense or a little bit more weak." Dr. Pontius opined that the nerve suffered two separate occurrences of harm. Dr. Pontius further opined "based on reasonable medical probability" that one of the causes of the damage or harm to the nerve near the knee was "pressure from swelling and superincumbent pressure from the strap causing some pressure on the nerve." Dr. Pontius further testified:

> Q.    Dr. Pontius, at the end of the day, if I understand your testimony correctly, you can't differentiate between the possible causes of Mrs. Brown's foot drop; is that true?
>     MR. APFFEL: Form.
>     THE WITNESS: Correct.
> Q.    (BY MR. WALLIS) And you can't tell the jury within a reasonable medical probability what caused her foot drop, can you?
>     MR. APFFEL: Form.
>     THE WITNESS: Well, injury to a nerve; yes, I can do that.
> Q.    (BY MR. WALLIS) But – but where that injury occurred, you can't tell the jury within a reasonable medi- -- degree of medical probability, can you?
>     MR. APFFEL: Form.
>     THE WITNESS: Well, I think you can. You have two – But that's my own opinion.

This testimony is more than a scintilla of evidence sufficient to raise a genuine issue of material fact with regard to whether it is "more likely than not" that Brown's foot drop was caused, in part, by the abductor pillow strap being allowed to become too tight.[1] Because there can be more than one cause-in-fact, Brown was not required to exclude the injury to the sciatic nerve above the knee as a concurrent cause of the condition. *See Bryant*, 196 S.W.3d at 170*; Morrell*, 184 S.W.3d at 284; *First Assembly of God, Inc.*, 52 S.W.3d at 493.

The Hospital relies heavily on two opinions in asserting that the summary judgment was properly granted. *See Sisters of St. Joseph of Texas, Inc. v. Cheek*, 61 S.W.3d 32 (Tex. App.—Amarillo 2001, pet. denied); *Lette v. Baptist Health System*, 82 S.W.3d 600 (Tex. App.—San Antonio 2002, no pet.). In *Cheek*, the expert testified that the actions in question "caused or contributed to" the plaintiff's death. 61 S.W.3d at 36. The court noted, however, that the expert did not define the nature of the causal relationship and the terms used did not quantify the degree to which the defendant's actions were related to the plaintiff's death. *Id*. The expert never testified that if the nurses had taken the actions in question, the plaintiff, in reasonable medical probability, would have survived. *Id*. at 36-67. Similarly, in *Lette*, no expert was able to render an unequivocal opinion that the administration of the drug in question caused the resulting injury. 82 S.W.3d at 602. In this case, however, Dr. Pontius unequivocally testified that the strap being too tight injured Brown's nerve and was one of the causes of Brown's foot drop.

---

[1] Because we do not rely on Dr. Pontius's recorded statement or the affidavit of Dr. David W. Edelstein, we need not decide whether or not the trial court erred in granting the Hospital's objections to that evidence.

**CONCLUSION**

Because Brown presented more than a scintilla of probative evidence to raise a genuine issue of material fact with regard to proximate causation, the trial court erred in granting the no-evidence summary judgment.


Rebecca Simmons, Justice